THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WOODROW BEAMER, Defendant-Appellant.

Second District   No. 77-129

Opinion filed May 8, 1978.

Mary Robinson and Michael Mulder, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of armed robbery, following a bench trial, and was sentenced to a term of four to 12 years in prison. On appeal, he argues that the trial court erred in denying his motion to suppress two statements which he gave police, since, (1) the State failed to prove that the defendant knowingly and intelligently waived his right to the

assistance of counsel, and (2) the State failed to meet its burden of proving that the statements were voluntary, since it failed to produce all witnesses material to the issue of voluntariness. We affirm.

On September 2, 1975, Will Todd robbed a 7-Eleven store in Loves Park, Illinois, at gunpoint. Two boys saw the robber leave in a "late model, light-colored T-bird." Immediately thereafter, defendant and Will Todd were stopped while riding in a 1969 or '72 Ford Thunderbird. The defendant was driving the car. Merchandise taken from the 7-Eleven store and a .22-caliber pistol were found in the car. The defendant and his companion were advised of their "rights" and then transported to the Sheriff's office.

At 2 a.m. on September 3, 1975, shortly after the defendant was arrested, he was interviewed by Detective Rodney Roop of the Winnebago County sheriff's police. Roop first read the defendant a "waiver of rights" form. The defendant was asked if he understood his rights and responded that he did, and signed the form. In response to questioning by Roop, the defendant made some inconclusive remarks, and then stated that he would like to "think about it awhile" before making a statement, and "possibly contact a lawyer." Questioning was immediately terminated and later that day the defendant was taken before a judge who "fully explained" his rights and appointed the public defender to represent the defendant. The defendant's preliminary hearing was set for September 10, 1975, at 2:45 p.m.

On September 9, 1975, Detective Meyers of the sheriff's department interviewed the defendant. He began by orally advising the defendant of his "constitutional rights." He then advised the defendant that law enforcement agencies in Tennessee and other States were making inquiries regarding the defendant, and that "they would possibly have charges coming up against him for armed robbery in those other states." The defendant was asked if he wanted to say anything about the robbery of the 7-Eleven, and responded that he "was involved in this armed robbery" and that he "did it with Willie Todd." Meyers asked him to reduce his statement to writing, but the defendant declined, stating that he would "like to spend the night in jail and think about it." The defendant asked Meyers to contact him the next day and stated that he would let Meyers know then whether or not he would give a written statement.

The next day, prior to the scheduled preliminary hearing, the defendant was brought to the detective bureau of the sheriff's office. He first talked to two "city officers" for approximately an hour. The State did not call the "city officers" as witnesses, and there is no testimony as to what occurred during the interview. After the "city officers" had finished talking to the defendant, at approximately 1 p.m., Detective Meyers

brought the defendant to his office and advised him of his constitutional rights by reading a "waiver of rights" form to him. Meyers read the defendant his rights "one at a time," pausing after each "right" to ask the defendant if he understood. After Meyers finished giving the defendant his "rights" he explained them again in "laymen's" terms, telling the defendant that if he said anything, it could be taken into court and used "to convict him of the crime of armed robbery." At the conclusion of these admonitions, the defendant stated that he understood his rights and desired to make a statement "since he thought about it all night and wanted to tell the truth."

He then signed a waiver of rights form and shortly thereafter signed a written statement, admitting that he was "in on the robbery with Will Todd" and that "when we went to the store our intentions were to rob it."

The defendant asserts that the State failed to prove that he knowingly waived his right to counsel prior to making the oral statement on September 9, and that the written statement on September 10 was the product of the "tainted" statement made on the 9th. The defendant argues that even though Detective Meyers testified that he orally advised the defendant of his "constitutional rights", prior to questioning him on September 9, this testimony was not sufficient to demonstrate that the defendant was informed of his right to counsel.

■■ We begin by noting that although the police knew, or should have known, that defendant was represented by an attorney on September 9, they arranged for and conducted the interview without notice to the defendant's attorney. While this court has refused to hold that statements obtained in the absence of counsel, even though counsel has been retained or appointed, are *per se* inadmissible, we observe that the State has a higher burden to show waiver of the presence of counsel, once counsel has been appointed, than in cases wherein interrogation takes place, prior to the appointment of counsel *People v. Sandoval* (1976), 41 Ill. App. 3d 741.

■■ Nonetheless, where such an issue is raised by a motion to suppress a confession, the State's burden of proof is proof by a preponderance of the evidence, and not proof beyond a reasonable doubt. (*E.g., People v. Noblin* (1973), 15 Ill. App. 3d 1060.) Here, arguably, the arresting officers' testimony that the defendant was advised of his "rights" at the scene of the arrest, or Detective Meyers' testimony that he advised the defendant of his "constitutional rights" on September 9, constituted obvious references to the customary *Miranda* warnings which, of course, are a familiar litany to virtually every police officer and include an admonishment of the right of counsel. However, the State's case does not rest upon this inference. The defendant could hardly have been unaware of his right to counsel on September 9, since he was present in court when

counsel was appointed to represent him on September 3, 1975, and the court's docket entry indicates that the defendant "was fully advised" of his rights at that time. Further, Detective Roop testified that he read the defendant a "waiver of rights" form on September 3, and the defendant stated that he understood the rights set forth in the form, which was introduced into evidence, and clearly set forth the right to counsel and to have counsel present during questioning. In fact, on September 3 the defendant demonstrated a working knowledge of his rights by telling Roop that he wanted to "think about it for awhile, and possibly contact a lawyer" before making any statement. As the court noted in *People v. Hill* (1968), 39 Ill. 2d 125, 131-32, "once *Miranda's* mandate was complied with at the threshold of the questioning it was not necessary to repeat the warnings at the beginning of each successive interview." On this record we cannot hold that the trial court's finding that the defendant knowingly and voluntarily waived his right to counsel, prior to making an oral confession on September 9, 1975, was against the manifest weight of the evidence.

■■ Apart from arguing that the written confession obtained on September 10, 1975, was "tainted" as a product of the oral confession made the day before, the defendant has argued that the State has failed to prove that the defendant knowingly waived his right to counsel in the interrogation on September 10. Although it is clear that the defendant was given complete *Miranda* warnings on September 10, the defendant contends that the written form advising him of his rights, which were carefully explained to him by Detective Meyers, and which he acknowledged that he understood, served only to confuse him. While the form advised the defendant that he had a right to remain silent, that any statements he made could be used against him in court, that he had a right to talk to a lawyer, before being asked any questions, as well as a right to have the lawyer present during questioning, and that, if he decided to answer questions without a lawyer present, he had the right to stop answering questions at any time, the defendant argues that the form did not enable him to "fully grasp the significance of the procedural situation in which he found himself," since it informed him that, if he could not afford to hire a lawyer, one would be appointed for him, even though he already had a lawyer. We find this argument to be meritless; the written statement of rights which the defendant received clearly and repeatedly advised him of his right to counsel, and it strains credulity to argue that the defendant did not understand his rights because he already had a lawyer when they were given to him.

Finally, the defendant urges that the State's failure to call the two "city officers" who interviewed him prior to the interview with Detective Meyers on September 10 mandates a reversal of his conviction. Where a

confession is objected to as involuntary, it should not be admitted unless each material witness on the issue is either produced or his absence explained. (*E.g., People v. Bell* (1977), 50 Ill. App. 3d 82.) However, this "is not a mechanical rule but a practical one, designed to assist the court in determining whether the confession was voluntary." (*People v. Sims* (1961), 21 Ill. 2d 425, 429.) Thus, in *Sims*, where the defendant claimed that his confession had been coerced by police brutality and the record showed that all of the persons (six in number) who could reasonably be considered material witnesses on the question of mistreatment were called and testified in denial of the defendant's allegations, it was not error to admit the confession into evidence, even though the defendant contended there were a total of 18 officers who were involved in interrogating him at one time or another. In this case, there was never any allegation that the "city officers" had anything to do with either of the defendant's statements. Detective Meyers' interview with the defendant, on September 10, was conducted pursuant to the defendant's express request that Meyers contact him. Meyers began the interview by advising the defendant of his rights, and there is nothing that would indicate that Meyers' interrogation was somehow linked to that of the "city officers." The evidence indicates that the interview by the "city officers" was not conducted in a "back office," and there was never any claim that the officers participated in or witnessed any actions that could be construed as physical or mental coercion. It is apparent that the testimony of these officers, being thus unrelated to the statements at issue, would not have been material to the claim raised by the defendant's suppression motion.

It is therefore clear that there was no error in the trial court's denial of the defendant's suppression motion, and the judgment of the circuit court of Winnebago County is affirmed accordingly.

Judgment affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.