THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACK JOSEPH COZZI, Defendant-Appellant.

First District (4th Division)    No. 78-235

Opinion filed February 5, 1981.

Laurence J. Bolon, of Frank, Melamed & Bolon, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Jack Joseph Cozzi, was charged with the offense of murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(1)). Following a bench trial, defendant was convicted and sentenced to serve 20 to 30 years with the Illinois Department of Corrections.

Defendant appeals from the judgment and sentence, presenting the following issues for review: (1) whether the trial court erred in putting the burden of proof on the defendant to establish that he did not waive his privilege against self-incrimination under the fifth amendment to the Federal Constitution; (2) whether the evidence established a waiver of the defendant's fifth amendment rights; (3) whether the court erred in not suppressing an alleged statement made by the defendant, where the defendant's attorney expressly prohibited police interrogation without the attorney's presence or notification; (4) whether the defendant was proved guilty beyond a reasonable doubt; and (5) whether the sentence should be reduced. We affirm.

Decedent's father, Stanley Garrison, testified that he saw his son, Patrick, on February 23, 1976, at 7 p.m., alive and well. The witness stated that on the following day he identified his dead son's body at the coroner's office. At trial, it was stipulated that Patrick Garrison died as a result of

fractures of the skull, caused by a blunt instrument. Death occurred about 7:30 p.m. on February 24, 1976.

Andrew Dobis, a bartender at Bambi's Restaurant and Lounge, located at 2809 74th Avenue, Elmwood Park, testified he worked at the bar the night of February 23, 1976. Cozzi, Daniel Duarte, and Ronald Deland were at the lounge for 10 minutes, leaving shortly after 10 p.m.

Thomas Capotosto testified that on February 23, 1976, at approximately 11 p.m., while driving with his cousin passed Bambi's, he saw an automobile stopped in the middle of the street; its motor was running, its lights were on, broken glass was on the street in front of it, the windows were knocked out, and a person was slumped over in the front seat, unconscious, but still breathing. The witness stated he instructed his cousin to call for an ambulance.

Ronald Deland testified that he was at Bambi's with Dan Cosentino and Carol Romanelli around 11 o'clock on the night in question. He was not sure whether Jack Cozzi was present. He heard a noise outside and asked Cosentino whether he wanted to leave. Cosentino indicated he did and then noticed his money was not on the bar. Deland stated he questioned Duarte regarding the money, but Duarte denied taking it. The witness further stated that while he was putting on his jacket a short time later, he looked through the window of the lounge and noticed someone who resembled Duarte striking the window of a car.

Patrick Elliot, the eyewitness, testified that he lived across the street from Bambi's. At 11:07 on the evening in question while preparing for bed, he heard tires "squealing." Looking through his bedroom window, he observed two people walking toward a car and carrying baseball bats. A third person came from the direction of the lounge and walked away from the back of the car. According to the witness, defendant Cozzi struck the bat on the hood of the car with a sharp blow and on the top of the windshield. He hit the windshield again, shattering it; then, he swung the bat at the door on the driver's side and struck another blow through the car window on the driver's side. The witness identified co-defendant Duarte as the person who put his right hand on the hood and catapulted his body over the front of the car. Further testifying, the witness stated that when Duarte reached the passenger's side, he opened the door and crawled into the front seat, staying there for 10 to 15 seconds before coming out. Elliot stated he could not see inside the car, and the entire occurrence took approximately 2 minutes.

When the police arrived, Elliot gave physical descriptions of the men. He described Duarte as being dressed in a dark coat and black Levi's, weighing 150 pounds, and 5 feet 10 inches in height. Duarte is, in fact, 5 feet 4 inches. Elliot said defendant was 5 feet 11 inches in height, weighing 165 pounds, with light brown hair and a light-colored mous-

tache. At 7 a.m. on February 24, Elliot went to the Elmwood police station where he viewed a lineup and identified defendant Cozzi. On February 25 at 7 p.m., Elliot viewed photographs at the police station and identified co-defendant Duarte.

Sergeant James Caliendo testified that shortly after 11 p.m. on February 23, he responded to a call to go to 2809 74th Avenue in Elmwood Park. At the scene, he observed a vehicle in the middle of the street. There was broken glass in the car and a large amount of blood. The injured person had been taken to the hospital. Officer Caliendo removed a bat from the back seat of the car; additionally, a blond bat was found in the gangway adjacent to Bambi's Lounge and the Texaco Service Station. The officer stated that after further investigation, he was directed to defendant's home by Dominick Marzovillo. Defendant was arrested and taken to the Elmwood Park police station at 6:30 a.m. on February 24. The witness stated that defendant was advised of his constitutional rights and signed a written acknowledgment that he had been notified of those rights.

Attorney Bernard Mann's testimony revealed that he went to the police station to speak with defendant and instructed defendant not to make any statements without the attorney being present. Leaving his card with a police officer, Mann stated he represented defendant and that no one was to talk to defendant without his being present.

In further testimony, Officer Caliendo stated that on February 24 at 9 p.m., while on follow-up investigation, he was informed that defendant wished to speak with him. The officer advised defendant of his rights. Defendant stated he and Duarte witnessed an altercation in front of Bambi's Lounge. He and Duarte struck the car with the light-colored baseball bat. Defendant asserted that he "was not going to take a murder rap alone." The witness stated he further advised defendant of his rights and suggested the defendant speak to his attorney and set up an official meeting with the State's Attorney.

After all of the evidence was presented, the court heard arguments on the motion to suppress defendant's statement to Officer Caliendo. Defendant argued that no statement should have been taken without his attorney being present. The trial judge denied defendant's motion. Defendant was found guilty of murder and sentenced from 20 to 30 years imprisonment.

Defendant contends the trial judge erred in ruling that the defense failed to meet its burden to suppress his statement to Officer Caliendo. Defendant asserts that it was the prosecution's burden to prove defendant's voluntary relinquishment of his fifth amendment privilege, and that his statement was taken in a legally proper manner outside the presence of defendant's counsel.

Defendant's allegation that the trial court treated him as the party having the burden of proof derives from the following statement made by the trial judge:

"Before I rule on your motion—your motion suggests the defendant was not admonished under *Miranda*.

Now, I will say you made no showing that was not done.

Also, that any proper waiver of rights under *Miranda* were not made voluntarily, knowingly, and intelligently.

You made no showing that occurred, and that all confessions, or statements, or admissions of the defendant were illicited [by] threat or coercion and that it was involuntary.

You made no showing on that, and for that reason your motion will be denied."

■■ When a motion is made to suppress a confession on ground that it is not voluntary, the burdens of going forward with evidence and of proving voluntariness is on the State, but the dual burdens do not have to be met simultaneously. Where the State makes *prima facie* showing that a confession was voluntary, the burden of producing evidence to show that confession was involuntary shifts to the defense, and shifts back to the State only when defendant has produced such evidence. (*People v. West* (1975), 25 Ill. App. 3d 827, 829, 322 N.E.2d 587, 588-89.) The State's burden of proof is proof by a preponderance of the evidence, and not proof beyond a reasonable doubt. (*People v. Beamer* (1978), 59 Ill. App. 3d 855, 857, 376 N.E.2d 368, 370.) The State met its burden by showing that defendant was advised of his constitutional rights and that defendant signed a written acknowledgment that he was notified of his rights. As the trial judge suggested, once the State had met its burden, it was defendant's burden to produce evidence showing the involuntariness of the confession.

■■ We are compelled to conclude that the trial judge's statement, when viewed within the context of the total record, did not improperly place the burden of proof on defendant.

Defendant further asserts that the evidence did not establish a waiver of his fifth amendment rights. The determination as to whether the defendant has been properly informed of his rights and whether he voluntarily, knowingly and intelligently waived those rights is to be made by the trial court, and that determination will not be disturbed unless it is against the manifest weight of the evidence. (*People v. Johnson* (1973), 55 Ill. 2d 62, 70-71, 302 N.E.2d 20, 25.) Here, the record is clear that defendant was advised of his rights three times; when he was arrested, before he made a statement to Officer Caliendo, and after he made a statement to Officer Caliendo. At the time of arrest, defendant signed a written acknowledgment of being notified of his rights. Before making a

statement, defendant indicated to Officer Caliendo that he understood his rights. Finally, defendant did not request the presence of his attorney before making a statement.

We find defendant made the alleged statement with an understanding of his rights and thereby waived those rights.

■■ Defendant asserts his statement should have been suppressed because his right to counsel was not waived in the absence of the attorney, whom defendant had retained and whose assistance had been requested earlier, at all times of questioning of the defendant by police officers. The test is that there be a showing of a knowing intent to speak without counsel. Once defendant has been informed of his rights and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows his rights and chooses not to exercise them. (*People v. Brooks* (1972), 51 Ill. 2d 156, 164, 281 N.E.2d 326, 332.) Although his retained counsel was neither notified nor present when defendant chose to forego the assistance of counsel, this does not compel the invalidation of his waiver if otherwise voluntarily and knowingly made. In order to establish a valid waiver of the right to counsel, however, the State must prove "an intentional relinquishment or abandonment of a known right or privilege." *People v. Aldridge* (1980), 79 Ill. 2d 87, 93, 402 N.E.2d 176, 179.

The record establishes that defendant did not request his attorney's presence. The police did not confer with defendant until he voluntarily summoned Officer Caliendo. In addition to meeting with defendant, the officer advised him of his rights and informed defendant that he should speak to his attorney and set up a meeting with the State's Attorney.

Defendant likens his case to *Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232. *Brewer* held that the defendant had not relinquished his right to counsel when he made a confession. *Brewer* is distinguishable from the instant case. In *Brewer*, the police officers initiated the rendering of the confession by the defendant, while in this case defendant initiated contact with the police and the rendering of his confession.

In our opinion, there is ample evidence the defendant intentionally relinquished a right known to him, and the court's finding to that effect was not contrary to the manifest weight of the evidence.

■■ Defendant further contends that he was not proved guilty beyond a reasonable doubt because his conviction rests solely upon evidence given by an eyewitness who peered through a 4-inch window opening at night. The testimony of a single witness is sufficient to convict provided the identification is positive and the witness is credible. Where the evidence is in conflict, it is the province of the trier of fact to determine the credibility of the witnesses and the weight to be afforded their testimony.

(*People v. Jennings* (1976), 37 Ill. App. 3d 982, 984, 347 N.E.2d 421, 422.) In a bench trial, such as here, the trial judge's determination as to the credibility of witnesses and the weight to be given their testimony must be accepted by the reviewing court unless it is contrary to the weight of the evidence or so unsatisfactory as to lead to a reasonable doubt of defendant's guilt. *People v. Nichols* (1975), 32 Ill. App. 3d 265, 268, 336 N.E.2d 194, 196.

■■ The record shows that the eyewitness' description of defendant was accurate. Although defendant suggests the witness' inaccurate description of his co-defendant should lead to reversal, we disagree. Discrepancies or weaknesses in the manner in which an identification is made only affect the credibility of the witness and the weight to be given to it, and this determination is within the province of the trial judge. The testimony of other witnesses and the remaining evidence amply supports the trial judge's determination of defendant's guilt.

■■ Defendant, finally, contends his sentence of 20 to 30 years should be reduced to equal his co-defendant's sentence of 14 to 22 years imprisonment. The trial judge is in a better position to determine the punishment to be imposed than is the court of review. A judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each individual case. The judgment depends upon many factors, such as defendant's prior record, credibility, demeanor, general moral character, mentality, social environment, habits, and age. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) The trial judge has a greater opportunity to consider these factors than the reviewing court. The trial court's decision in regard to sentencing is entitled to great deference and weight.

The record reveals the judge reached his decision with careful consideration of factors pertinent to defendant. He imposed a heavier sentence on this defendant because of his more active participation in the crime.

We cannot say the trial judge abused his discretion in imposing the sentence in this case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and JIGANTI, JJ., concur.