THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* REVONNE MONROE, Defendant-Appellant.

First District (4th Division)   No. 79-2488

Opinion filed April 16, 1981.

Ralph Ruebner and Richard E. Cunningham, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Gael McCaughey-O'Brien, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

Following a jury trial defendant Revonne Monroe was convicted of armed robbery and sentenced to six years' imprisonment. On appeal he contends: (1) the motion to suppress defendant's confession should have been granted because the State failed to produce all material witnesses; (2) defendant was denied a fair trial when the prosecution was permitted to argue to the jury that they need not consider the circumstances of the confession; (3) the prosecutor improperly commented in closing argument on defendant's failure to testify; and (4) defense counsel's failure to tender an instruction to the jury on evaluating the confession constituted actual incompetence of counsel.

We reverse and remand for a new trial.

Prior to trial defendant initially filed an unverified motion to suppress which appears to have been a form motion. Included in its many allegations was the charge that defendant's statement was the result of physical coercion. Subsequently an amended, verified motion to suppress was filed. It did not include any allegation of physical coercion but did retain from the prior motion an allegation that defendant's statement resulted from psychological and mental coercion. This amended motion also added specific allegations as to violations of defendant's rights as a juvenile, including charges that his parents were not present during his interrogation, that a youth officer also was not present, and that defendant was not told he could be tried as an adult.

At the hearing defense counsel referred only to this amended motion. The State called Investigator Kenneth Winkie to testify concerning the circumstances leading up to the confession. He testified that on May 9, 1978, he and Investigator Gary Baranowski went to defendant's home in connection with their investigation of a series of robberies in the vicinity of north side Chicago el stations. Present at the home were the defendant, his brother Kenneth, and an older brother later identified as Wayne. The investigators told them what they were investigating and took defendant and Kenneth to the police station. Wayne also chose to accompany them. Prior to leaving the home the investigators left a note for defendant's parents, telling them where they had gone. They had been told that the parents were not home and could not be contacted.

When the investigators arrived at the station at about 11 p.m. there was no youth officer present. Winkie telephoned youth headquarters to advise them they had juveniles in custody. He was told a youth officer

would be coming to the station. Defendant was separated from his brothers and at about 12:30 a.m. was questioned by Baranowski and Winkie. He was advised of his *Miranda* rights and was also told that he might be tried as an adult. Winkie explained to the defendant that if he were tried as an adult he could be imprisoned and that trial as a juvenile might result in his being sent to the Audy Home. Defendant stated that he understood his rights and wished to answer questions. He then made a statement.

On cross-examination defense counsel elicited from Winkie his awareness of special procedures applicable to police questioning of juveniles under detention. These included requirements that attempts be made to contact the juvenile's parents, that a youth officer be notified when the juvenile was taken into custody, and that the juvenile be turned over to the juvenile officer or if none was available to the desk sergeant. Winkie also conceded that these requirements included the instruction that the better practice was to have a youth officer or parent present during questioning. Winkie testified that he did not ask the defendant if he wished to have Wayne present or if he wanted to wait until one of his parents arrived before answering questions. Wayne was informed of the incident under investigation but did not ask to speak to the defendant.

Winkie did not recall if he ascertained the extent of defendant's education before talking to him. He did know that defendant was one day short of his 17th birthday. The questioning of the defendant took about one-half hour; the youth officer arrived at about 1 a.m., after the questioning was completed. Defendant's mother arrived at about 3 a.m. Neither Winkie nor anyone else to his knowledge used psychological coercion to obtain a statement from the defendant.

Winkie testified that only he and Baranowski were present when defendant made his confession. However he also testified that two officers from the mass transit unit, Officer Radcliff and his partner, were there that evening in connection with the same investigation. There were times when Radcliff interviewed the defendant that evening, but Winkie could not recall whether this occurred before or after defendant confessed.

At the conclusion of Winkie's testimony the State informed the court that Investigator Baranowski was available to testify if the defense so desired but that his testimony would be substantially the same as Winkie's. The defense made no such request, and the State rested. Defense counsel then moved for a directed finding on the ground that the State had failed to produce Officer Radcliff and his partner as material witnesses. This motion was denied.

Defendant presented the testimony of his older brother Wayne, who was 19 at the time of the hearing. Wayne testified that the police had told

him and his brothers to come with them to the station without giving a reason. His mother was working at the time but could have been reached at a telephone number she had left with them. However the police did not at that time ask him where his mother was. At about midnight Wayne left the station and returned home.

Defendant's mother testified that on the evening in question she was doing custodial work downtown. She had left with her sons a phone number where she could be reached. She returned home shortly after midnight and was told by Wayne that defendant was at the police station. No message had been left for her at her home. She arrived at the police station at about 12:45 a.m.

The court ruled that although the police had failed to adequately comply with the procedural requirements for questioning juveniles, the defendant had been properly advised of his rights and was shown to have understood them, so that no suppression of his confession was required. After this ruling defense counsel again objected to the failure of the State to produce all material witnesses.

At trial Victor Fishman testified that he was the victim of the robbery. On May 7, 1978, he was walking down an alley to the rear entrance of his home at 6726 North Glenwood in Chicago when a youth came running up from behind and asked for a dime. Fishman gave him one and the individual then went ahead of Fishman, where he was joined by another boy in his late teens. When Fishman arrived at the rear entrance of his home the two came back and demanded his money. One of them brandished a chrome-plated gun. As this was occurring Fishman noticed that two other boys in their teens had appeared behind him. One of the two who first approached Fishman took $65 from him and then all four of them fled. Fishman was unable to identify any of his robbers.

Investigator Baranowski testified to substantially the same facts as Investigator Winkie had at the pretrial hearing, with the following additional facts. Defendant had admitted that he and three other individuals had gone up to the north side of Chicago late in the afternoon of May 7 with the intention of committing a robbery. They walked a short distance from the el station and followed an old man into an alley. Two of the individuals robbed the man while defendant and the fourth individual acted as lookouts. Two guns were used in the robbery; one was a small silver-handled starter pistol. About $60 was taken in the robbery, and the defendant received $15 of it after they fled the scene.

On cross-examination defense counsel adduced substantially the same testimony as he had adduced from Winkie at the hearing concerning the procedure required for questioning juveniles and the extent to which the officers followed them. He also ascertained from Baranowski that the questioning of the defendant by Officer Radcliff and his partner occurred

after the defendant had confessed. Baranowski stated that he saw no blood or bruises on the defendant's face that night. Defendant's statement was not transcribed by a court reporter nor did Baranowski reduce it to a complete writing. He did incorporate notes he had taken concerning the statement into a police report but he did not preserve the notes. He indicated that to his knowledge court reporters were available only in homicide cases.

Wayne Monroe testified that on the evening of the questioning he was never asked to call his mother, although he did have her phone number. He noticed nothing unusual about defendant's face at the time they were transported to the station. The police never told him what the defendant was charged with, nor did they tell him he could be with the defendant during questioning.

Defendant's mother testified that she had left a phone number where she could be reached with her sons. However it was only when she arrived home after work that she learned from Wayne that defendant was in custody. She went to the police station, and when she saw the defendant his lip was cut and bleeding on the inside. She reported this to the police and filled out a complaint form concerning it.

## I.

Defendant first contends that his confession should have been suppressed because the State failed to produce, at the hearing on his motion to suppress, all witnesses material to the question of voluntariness.

■■ When the issue of the voluntary nature of a confession is raised by a motion to suppress, the State is required to produce all witnesses whose testimony would be material on that issue or explain their absence. (*People v. Armstrong* (1972), 51 Ill. 2d 471, 282 N.E.2d 712; *People v. Sims* (1961), 21 Ill. 2d 425, 173 N.E.2d 494, *cert. denied* (1962), 369 U.S. 861, 8 L. Ed. 2d 19, 82 S. Ct. 951.) The requirement is intended to assist the trial court in determining the voluntariness of a statement; it is not meant to be applied mechanically. (*People v. Beamer* (1978), 59 Ill. App. 3d 855, 376 N.E.2d 368; *People v. Sims* (1961), 21 Ill. 2d 425, 173 N.E.2d 494, *cert. denied* (1962), 369 U.S. 861, 8 L. Ed. 2d 19, 82 S. Ct. 951.) Thus it does not require that the State produce every person having any contact with the defendant during the time of his detention up until his confession even though those people had nothing to do with that confession. *People v. Nicholls* (1970), 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied* (1970), 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578; *People v. Jennings* (1957), 11 Ill. 2d 610, 144 N.E.2d 612, *cert. denied* (1958), 356 U.S. 904, 2 L. Ed. 2d 581, 78 S. Ct. 564.

At the hearing on defendant's motion Investigator Winkie testified that he and Investigator Baranowski were the only ones present when

they obtained defendant's confession. The State offered to produce Baranowski if defense counsel desired his testimony, but stated that his testimony would be substantially the same as that of Winkie. Defendant made no such request and on appeal does not claim error from the failure to produce this witness. At trial Baranowski did testify to substantially the same facts as Winkie had. However at the hearing Winkie also testified that two mass transit officers, Officer Radcliff and his unnamed partner, were also at the station in connection with the investigation of the defendant. He also testified that Officer Radcliff had interviewed the defendant on several occasions that evening, but could not recall whether this occurred before or after he and Baranowski elicited the confession. Defendant did object to the failure of the State to produce these officers, and it is on this failure that he premises his claim of error on appeal.

■■ Defendant contends that these witnesses were material to the issue of whether physical and mental coercion was exerted on the defendant prior to his confession. The allegation of physical coercion was included in defendant's original motion to suppress, but that motion was replaced by a more specific verified motion in which no such allegation was made. None of the testimony adduced at the hearing raised the question of physical coercion, nor did defense counsel raise it in argument on the motion. It was only at trial that the issue was raised by the testimony of defendant's mother that she saw him with a cut and bleeding lip at the police station after his interrogation. Clearly then the materiality of the transit officers' testimony cannot be based on its possible relevance to an issue not raised at the hearing. And although the amended motion did contain a general allegation of psychological and mental coercion, the only specific allegations of this nature were that defendant's rights as a juvenile were violated when the police failed to follow established procedures on such matters as notification of parents and obtaining the presence of juvenile officers during questioning. The testimony at the hearing established that these allegations were directed toward the behavior of Investigators Winkie and Baranowski, who had arrested the defendant and who claimed to have attempted to follow the procedures required for questioning juveniles. The trial court found that their efforts were insufficient to comply with those requirements, but also held under the authority of *People v. Steptore* (1972), 51 Ill. 2d 208, 281 N.E.2d 642, that these violations did not require suppression of defendant's confession. Defendant has not challenged this ruling on appeal. We conclude that defendant has failed to establish that the testimony of the two transit officers would have been material to the issues actually raised at the hearing on the motion to suppress. The facts of this case are distinguishable from those of *People v. Armstrong* (1972), 51 Ill. 2d 471, 282 N.E.2d 712, cited by defendant, in which the State failed to produce police

officers named by the defense as having participated in or observed a beating of the defendant during his interrogation. We have noted that the rule at issue is a practical one, intended to aid the trial court in its determination of voluntariness. Here we find the absence of the witnesses at issue did not impede the trial court's determination of the voluntariness of defendant's confession and did not impair the defendant in the presentation of the voluntariness issue he chose to raise. Accordingly we find no basis for overturning the trial court's decision denying defendant's motion to suppress his confession.[1]

## II.

Defendant also contends that his conviction must be reversed because of improper and prejudicial final argument by the prosecutor which deprived him of a fair trial. Defendant asserts that the prosecutor improperly suggested to the jury that in evaluating defendant's alleged confession they could not consider the circumstances under which it was made because that question had already been determined by the trial court.

■■ It is clear that a trial court's determination that a statement is admissible despite a defendant's claims of involuntariness does not preclude that defendant from challenging that statement before the jury at trial. As was stated in *People v. Cook* (1965), 33 Ill. 2d 363, 369-70, 211 N.E.2d 374, 377:

> "[T]he admissibility of a confession which is challenged on the ground that it is involuntary is a matter for the trial judge to determine in the first instance by a hearing out of the presence of the jury. [Citation.] If the court rules that the confession is voluntary and the confession is admitted in evidence, the defendant still has the right to present evidence to the jury which affects the credibility or weight to be given the confession. [Citations.]"

In this cause defendant attempted to challenge the confession he allegedly made by adducing testimony about the failure of the police to comply with procedures for questioning juveniles as well as by evidence suggesting that defendant may have been struck by the police during questioning. This latter point was raised for the first time at trial and had not been a basis for defendant's pretrial challenge of the voluntariness of the confession. In closing argument to the jury defense counsel utilized this evidence to seek to raise doubts with the jury as to whether any confession in fact was made and, even if it was made, whether it was credible. In

---

[1] We also note that at trial Officer Baranowski testified that in fact the two transit officers only interviewed the defendant after his confession, thus eliminating any doubt as to their lack of materiality.

rebuttal argument to the jury the prosecutor addressed the issue in the following manner:

"[Prosecutor]: Well, we heard the testimony from Wayne. He seems like a nice fellow. I am not sure what the purpose of his testimony was except to say perhaps Revonne's lip was fine on the way to the police station. He did say that, and he and also his mother said some things about, a lot of stuff about juveniles, a lot of stuff about, 'Well, did you get a chance to go in and talk to Revonne before he gave his confession or afterwards? Were you able to stay there and did you bring this and did you stay there? Did you call so and so?' All of this stuff about phone calls.

I just can't understand that. Wayne has the phone number. This is the police station. What have we got here? The police department is supposed to get a blanket for him, bring down hot chocolate, coddling criminals. Is that what you ladies and gentlemen of the jury want?

[Defense Counsel]: Objection.

THE COURT: Overruled.

[Prosecutor]: He had the phone number. Wayne had the phone number. What did the police have to call his mother for? If there are any violations, if there had been one single violation of this man's rights under the juvenile laws, under the constitution or any laws of this country, of this State of this country, this man, Judge—

[Defense counsel]: Objection, motion for a mistrial.

THE COURT: Sustained; denied.

[Prosecutor]: Well, you know if there had been any violation, ladies and gentlemen, something would have been done about it.

[Defense counsel]: Objection.

THE COURT: Overruled.

[Prosecutor]: It is not your duty to be concerned about any legal violations that may or may not have occurred.

[Defense counsel]: Objection.

THE COURT: Overruled.

[Prosecutor]: You are, as you were told, the judges of the facts. Not the law. Judge Strayhorn judges the law. Any violation of the law, he takes care of.

[Defense counsel]: Objection.

THE COURT: Overruled.

[Prosecutor]: He takes care of it. That is baloney, violation of his rights. Believe me, they would have been taken care of.

[Defense counsel]: Objection.

THE COURT: Overruled."

■■ We find this argument to have been improper and prejudicial. The issue of the credibility of defendant's confession and whether any confession was made was the crucial factor for the jury in determining defendant's guilt or innocence. The testimony of the victim corroborated details of the confession but did not directly incriminate the defendant. Yet the prosecutor unfairly and incorrectly implied to the jury that they should not concern themselves with the manner in which the confession was obtained. The jury was told that any violation of defendant's rights "would have been taken care of." In fact the issue of physical coercion had not even been raised prior to trial so there had been no determination of that issue at all, and, as we have noted, the trial court's determination that the confession was admissible despite police violation of procedures for questioning juveniles did not preclude the jury from considering those same violations in evaluating the weight to be given to that confession. In *People v. Carter* (1979), 73 Ill. App. 3d 406, 392 N.E.2d 188, the prosecutor, over repeated successful objections by defense counsel, informed the jury that defendant's arguments concerning the suggestiveness of an identification procedure had been determined by the court in a pretrial proceeding. This argument was held to constitute reversible error because it interfered with the proper function of the jury to determine the reliability of identifications made under questionable circumstances. Here the jury was told by the prosecutor that the court had already decided the very issues surrounding the confession which they properly should have utilized in evaluating that confession. Repeated objections to this line of argument were, with one exception, denied by the trial court, thus reinforcing the effect of these erroneous comments. Given the paramount importance of the jury's evaluation of the confession in this cause we find that the prosecutor's comments denied the defendant a fair trial and require reversal of his conviction.

### III.

Defendant also contends that the final argument of the prosecutor prejudiced his right to a fair trial in another manner, by commenting on his failure to testify. In her closing argument defense counsel contended that the State was relying solely on the testimony of one police officer to establish that defendant had confessed, noting that they had failed to produce the other police witness to that confession and that the victim could not identify the defendant. In rebuttal the prosecutor argued that although they did not have an eyewitness identification the confession evidence was stronger than such an identification because it in effect was the defendant incriminating himself. He then made the following argument:

"[Prosecutor]: Now, he does not say that to you, ladies and gentlemen of the jury, in person because—

[Defense counsel]: Objection, your Honor.

THE COURT: Overruled.

[Prosecutor]: —because obviously he doesn't want to face the consequences of criminal acts.

[Defense counsel]: Objection.

THE COURT: Overruled.

[Defense counsel]: Objection.

THE COURT: Overruled. Don't yell at me. I said overruled.

[Defense counsel]: I am sorry, your Honor.

[Prosecutor]: He doesn't want to face the criminal consequence of what he did. He committed a criminal act. He robbed another person who lives in this society and he knows he is found out and he knows now that that is not looked upon with favor. The citizenry doesn't like other people going around getting robbed. Now he doesn't want to admit it, but he admitted it at the time and you heard those admissions from Investigator Baranowski.

A confession is no mistake. It is not something made up by the police department. This man admitted that and he doesn't want to admit it now, but he admitted it then and that is better than an eyewitness identification because there is no mistakes in it."

Later in this argument the prosecutor informed the jury that the confession was "uncontradicted and undenied by any single person." Defense counsel's objection and motion for mistrial based on this statement was denied. The prosecutor then told the jury the defendant "doesn't want to continue with his admission, with his confession. He wants the State to prove the case against him. Fine. As we have pointed out, we welcome that burden." Later the prosecutor reiterated that defendant's confession was "in no way contradicted"; another defense objection to this argument was denied.

■■ The prosecutor's statement to the jury that defendant did not tell them of his confession because he did not want to face the criminal consequences can only be construed to have had the purpose and effect of suggesting to the jury that defendant's failure to testify was evidence of his guilt. As such it constituted prejudical error. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19; *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490.) The prosecutor's subsequent comments that we have outlined only served to bolster the prejudicial effect of his original comment. Thus, on this ground as well as because of the other improper comments of the prosecutor discussed earlier we reverse defendant's conviction and remand for a new trial.

818

Because of our disposition of defendant's contentions concerning prejudicial final argument by the prosecutor we need not consider his claim of ineffective assistance of counsel.

The judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.