UNITED STATES of America ex rel.
Ronald THOMAS, Petitioner,

v.

Michael O'LEARY, Respondent.

No. 85 C 01139.

United States District Court,
N.D. Illinois, E.D.

May 1, 1985.

Ronald Thomas, pro se.

Neil F. Hartigan, Atty. Gen., Mark Rotert, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ronald Thomas ("Thomas") sues under 28 U.S.C. § 2254 ("Section 2254") for habeas corpus relief from his Illinois state court conviction for murder after a bench trial. For the reasons stated in this memorandum opinion and order, Thomas' petition is denied and this action is dismissed with prejudice.

### Facts

On the evening of May 14, 1981 Thomas walked to a liquor store on Chicago's south side. When he neared the store's front door he was growled at by a German shepherd dog—one he recognized as belonging to Ray Townsend ("Townsend") (R. 91, 93). According to Thomas' testimony he had encountered the dog before on visits to Thomas' uncle, who lived next door to Townsend. On two occasions, Thomas said, the dog had jumped the fence separating Townsend's backyard from the uncle's and tried to attack Thomas (R. 93–94).

When the dog began to growl at Thomas in front of the liquor store, Thomas pulled a butcher knife from his waistband and waved it at the dog (R. 95). At that point Townsend and a companion, Walter Berry, walked out of the store. Townsend confronted Thomas and ordered him to stop menacing the dog (R. 97). Thomas then put the knife back in his waistband (*id.*).

Up to that point Thomas' story is consistent with Berry's, but the two accounts differ markedly as to the events that followed. Because the trial judge obviously

credited Berry's version (a fact whose legal significance is discussed later), this opinion will turn first to Berry's story and then to Thomas'.

According to Berry, once Thomas put the knife away the dog ran home (R. 19, 44, 45). Witness Deborah Baggette confirmed the dog arrived at home some 5–10 minutes before Townsend (R. 58–59). Thomas and Townsend continued to argue, and Berry urged them to stop (R. 10–22, 39, 40). All three men then shared a drink of the wine Berry and Townsend had purchased (R. 22, 33–34, 43, 45, 50).

Next Berry said the three men began walking side-by-side toward Townsend's home, with Berry between the other two (R. 40–41). Townsend and Thomas continued to argue (R. 41). Townsend said to Thomas:

Well, it must be more than the dog.

Thomas replied:

It doesn't really have to be the dog. Because, hey, if I don't like you, I don't like you (R. 22–23).

It doesn't have to be the dog. Because if I want to stab you, all I have to do is this (R. 23, 53).

At that point Thomas pulled the knife from his waistband, reached around Berry and fatally stabbed Townsend in the chest (R. 24–25).

It is undisputed Townsend was unarmed when he was stabbed. Berry said Townsend did not provoke the attack by making any sort of threatening move toward Thomas (R. 29). After the stabbing Townsend ran home and collapsed on his porch (R. 26, 59, 134).

Thomas gave a significantly different story, arguing the stabbing was both an accident and in self-defense. According to him the dog remained with Townsend during the entire incident (R. 97, 100).[1] When Thomas began walking back to his uncle's house, Berry walked beside him. Town-

send and the dog followed about three feet behind Thomas (R. 99–100, 113). Thomas continued to argue about the dog with Townsend, who Thomas claims was drunk (R. 99–100). Thomas was afraid both Townsend and the dog would attack him (R. 102).

According to Thomas, Townsend then asked "what did I want to do and then he made a move to come toward me" (R. 101). Because Thomas thought Townsend was "fixing to jump on me," Thomas drew the knife and tried "to push him back off me," when "accidentally the knife hit him" (R. 102). After Townsend ran home Thomas "walked away" (*id.*).

After the lawyers had finished interrogating each of Berry and Thomas, Judge Robert Massey questioned them. His inquiries of Berry were brief, clarifying a few details about the stabbing (R. 52–53). Judge Massey questioned Thomas at greater length, probing weaknesses in Thomas' story and pressing Thomas about his reasons for carrying a butcher knife (R. 128–35).

Judge Massey found Thomas guilty of murder and armed violence and sentenced him to a term of 20 years' imprisonment. Thomas appealed, and the Illinois Appellate Court affirmed the murder conviction but vacated the armed violence conviction (Complaint Ex. A). Then the Illinois Supreme Court denied leave to appeal (Complaint Ex. B). Thus Thomas' state court remedies have been exhausted.

*Issues Before This Court*

Thomas' petition urges two grounds for relief:

1. He was not proved guilty of murder beyond a reasonable doubt.

2. He was "denied his right to a fair and impartial trial where the trial judge

---

1. That statement is squarely at odds with the testimony of Ms. Baggette as well as with Berry's version. And as the rest of this paragraph reflects, it is critical to Thomas' account of what happened. Though a trier of fact need not believe the testimony of a larger number of witnesses (that is not what "weight of the evidence" conveys), it is clearly impossible to say a factfinder who does so is irrational.

abandoned his role of neutral finder of fact and assumed the role of the prosecutor." This opinion will deal with those arguments in turn.[2]

### 1. *Sufficiency of the Evidence*

*United States v. Koopmans*, 757 F.2d 901, 907 (7th Cir.1985) has recently reconfirmed (albeit in the criminal appeal context) the standard defined in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) for habeas corpus cases:

> The standard we apply is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson*, 443 U.S. at 324, 99 S.Ct. at 2791 put the same concept in slightly different words:

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

■ By that standard—however phrased—the evidence was clearly sufficient to support a conviction for murder. Illinois law defines murder to include a killing without lawful justification, where the killer (1) voluntarily and wilfully commits the act resulting in death, (2) knowing the act creates a strong probability of death or bodily harm to the victim or another person. Ill.Rev.Stat. ch. 38, ¶ 9–1(a)(2); see *People v. Bartall*, 98 Ill.2d 294, 306–07, 74 Ill.Dec. 557, 563, 456 N.E.2d 59, 65 (1983). Berry's testimony established all those elements: wilfulness, lack of justification and knowledge of a strong probability of death or bodily harm.

Berry's testimony was unquestionably more than adequate to disprove self-defense. *People v. Kyles*, 91 Ill.App.3d 1019, 1021–22, 47 Ill.Dec. 494, 496, 415 N.E.2d 499, 501 (1980) (quoting *People v. Williams*, 56 Ill.App.2d 159, 165, 205 N.E.2d 749, 752 (1st Dist.1965)) stated the elements of a self-defense claim:

> (1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he used is necessary; and (6) that the above beliefs are reasonable.

Berry's version of the events, credited by Judge Massey, belies any notions (1) Townsend was the aggressor or even threatened force, (2) harm was imminent or (3) the force employed was in any way necessary. Indeed, even Thomas' *own* testimony negates his self-defense claim by establishing the force used was excessive.

■ Judge Massey's function as trier of fact was to judge the credibility of the witnesses and the weight to be given their testimony. That judgment is of course accorded the same respect as a jury's determination. *People v. Cozzi*, 93 Ill.App.3d 94, 99–100, 48 Ill.Dec. 670, 675–76, 416 N.E.2d 1192, 1196–97 (1st Dist.1981). Obviously Judge Massey credited Berry's testimony—corroborated by that of Baggette—and disbelieved Thomas, as he was assuredly entitled to do. Because Berry's testimony squarely supports the murder conviction, this Court may not second-guess Judge Massey.

### 2. *Assertedly Improper Questioning by the Court*

■ *United States v. Kidding*, 560 F.2d 1303, 1314 (7th Cir.1977) teaches a

---

**2.** Although Thomas' petition said he would file a memorandum of law on or before March 23, 1985, he has not done so. Nonetheless, because he had raised the same issues before the Illinois Appellate Court, his principal arguments may be gleaned from that court's thorough opinion.

trial judge may question witnesses as long as he or she remains impartial. In a jury trial the judge must take special care to examine witnesses in a manner that does not communicate a bias to the jury (*id.*); *United States v. Hill,* 332 F.2d 105, 106 (7th Cir.1964). Because that danger is not present in a bench trial, the judge is free to take a more active and aggressive role.. In that event trial-judge questioning is grounds for reversal only where it is so partial as to indicate the court prejudged the case before hearing all the evidence. *Kidding,* 560 F.2d at 1314; see *United States v. Cassiagnol,* 420 F.2d 868, 878 (4th Cir.), *cert. denied,* 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654 (1970).

■ Judge Massey's questioning gives no hint of prejudgment. His inquiries of Berry were neutral and quite brief. His examination of Thomas (though understandably revealing skepticism) seemed primarily intended to clarify details and to give Thomas an opportunity to explain weaknesses in his story. Judge Massey's questions were not sharp, chiding questions but rather more neutral inquiries that elicited full-sentence answers. Admittedly Judge Massey's question whether Thomas was a butcher was an ironic reference to his carrying a butcher knife in his waistband, but that question alone does not give rise to an inference of prejudice.

Most importantly, Judge Massey's examination of Thomas occurred at the close of the defense case, after the judge had heard all of the evidence save the state's brief rebuttal testimony. Having heard the entire defense case, Judge Massey was entitled to have a perspective on the issues. It is difficult to imagine how anything he asked Thomas at that point—save making an explicit admission of bias—could have indicated prejudgment, as contrasted with (at worst) a judgment in the process of formulation. In fact, had Judge Massey already made up his mind, there would really have been no purpose in his asking Thomas *any* questions, for the record before he asked the questions was ample to support a guilty verdict.

*Conclusion*

Because Thomas' contentions are wholly predicated on claimed legal defects in his trial, no evidentiary hearing is required (Rule 8(a) following Section 2254). Unquestionably there was more than sufficient evidence to convict Thomas of murder, and there is no indication Judge Massey prejudged Thomas' guilt. Therefore Thomas' petition for a writ of habeas corpus must be—and is—denied.