2001 ME 88

**STATE of Maine**

v.

**William SAWYER, Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 18, 2001.

Decided: June 13, 2001.

———

David W. Crook, District Attorney, Allan Kelley, Deputy Dist. Atty., Paul Rucha, Asst. Dist. Atty., Augusta, for State.

David M. Lipman, Esq., Gregg. D. Bernstein, Esq., Lipman & Katz, P.A., Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] The State appeals from a judgment of the District Court (Augusta, *Vafiades, J.*) suppressing, as involuntary, a statement made by William Sawyer, Jr. We vacate the judgment.

## BACKGROUND

[¶ 2] The officer testified to the following facts at the suppression hearing. In December of 1999, at approximately 1 a.m., an officer on routine patrol observed a truck heading toward him passing another vehicle. To avoid a collision, the officer was forced to pull over into the breakdown lane. The officer clocked the truck at 73 mph in a 50 mph zone, proceeded to turn on his blue lights, and turned his cruiser around to follow the vehicles. While following the vehicles, the officer passed a driveway and saw two sets of taillights. He turned around a second time and pulled into a residential driveway. The court found that "[t]he red truck was parked up the driveway, the white vehicle was behind the truck and partially to the left," and "the officer parked behind the white car." The officer stated that he was conducting an investigatory stop based on a civil violation, and the court determined that the officer "thought it was important to talk to the driver of the vehicle regarding his dangerous pass and his speed."[1]

[¶ 3] The officer observed four males in the driveway, including Sawyer who was standing by the front fender of the truck. The court found that the officer requested that Sawyer come talk to him, asked Sawyer if he was the driver of the truck, and Sawyer answered affirmatively. Next, the officer requested Sawyer's license and conducted a field sobriety test, during which Sawyer told the officer he had been drinking too much. The officer agreed, placed him in handcuffs, and placed him in the cruiser. The officer did not administer *Miranda* warnings prior to questioning Sawyer.

[¶ 4] Sawyer was charged with criminal OUI pursuant to 29–A M.R.S.A. § 2411 (1996),[2] and pleaded not guilty. Sawyer filed a motion to suppress the statements and arrest,[3] and a hearing was held at

---

1. Though the officer was originally conducting an investigatory stop based on a civil violation, Sawyer was charged with criminal OUI.

2. 29–A M.R.S.A. § 2411 states in pertinent part:
 1. **Offense.** A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:
 A. While under the influence of intoxicants; or

 B. While having a blood-alcohol level of 0.08% or more.

3. The motion states in pertinent part:
 1. Certain statements were obtained from the Defendant as a result of interrogation contrary to the Defendant's constitutional rights under the Constitution of the state of Maine and the United States Constitution.
 2. The arrest in this matter is a product of an unconstitutional interrogation

which only the officer testified. The court made the following determinations: the officer was justified in making an investigatory stop, the officer subjected Sawyer to an interrogation, Sawyer was not in custody, *Miranda* warnings were not required, Sawyer's statement that he was the driver of the truck was not made voluntarily, and Sawyer's statement that he had been drinking too much was a spontaneous statement made voluntarily. As a result, the court suppressed Sawyer's involuntary admission to operating the truck and suppressed the arrest because probable cause for the arrest was partially based on Sawyer's involuntary statement. The State's motion for reconsideration was denied, and the State filed this timely appeal pursuant to 15 M.R.S.A. § 2115–A (1980) and M.R.Crim. P. 37B.

### SAWYER'S ADMISSION

■ [¶ 5] The State contends the court reached two legally inconsistent conclusions by using similar facts to determine that Sawyer was not in custody but his admission that he was the driver was involuntary. The State further contends the court erred in its factual findings and its application of the law. Sawyer contends the State failed to prove beyond a reasonable doubt that his admission to operating the truck was voluntary.

[¶ 6] In concluding that Sawyer's admission to operating the truck was involuntary, the court made the following findings:

> The burden is on the State to prove beyond a reasonable doubt that the defendant's statements were voluntary. The court finds that the defendant's vehicle was blocked by the officer's, the officer had arrived with his blue lights

on, the officer was directing the defendant's movements and asking questions. *Based on the State's questioning of its own witness, the officer clearly stated that when he approached the defendant to ask him for information, the defendant was not free to walk away.* Based on these facts, the court concludes that a reasonable person would believe that he had no choice but to answer the officer's questions. The court finds that the defendant's statement that he was the driver of the vehicle was not voluntarily made.

(citation omitted) (emphasis added).

■ [¶ 7] The "suppression judge must consider the totality of the circumstances in determining whether a confession is voluntary ...." *State v. Coombs,* 1998 ME 1, ¶ 7, 704 A.2d 387, 389. "Although findings of fact are reviewed deferentially, the application of legal principles to those findings is reviewed independently." *Id.* ¶ 8, 704 A.2d at 390. "[T]he dispositive issue of the voluntariness of a confession, although based on all the facts and circumstances surrounding the confession, is a legal issue warranting independent appellate review." *Id.* ¶ 9, 704 A.2d at 390. Thus, we determine whether the court's factual findings warrant the legal conclusion that Sawyer's admission to operating the truck was involuntary.

■ [¶ 8] "A confession is admissible in evidence only if voluntary, and the State bears the burden of establishing voluntariness beyond a reasonable doubt." *Id.* ¶ 10, 704 A.2d at 390. "In order to find a statement voluntary, it must first be established that it is the result of defendant's exercise of his own free will and rational intellect." *State v. Rees,* 2000 ME 55, ¶ 3, 748 A.2d 976, 977 (citing *State v. Caouette,*

and/or without probable cause such that the arrest should be suppressed under the

Constitution of the state of Maine and the United States.

446 A.2d 1120, 1123–24 (Me.1982)). "[T]he voluntariness requirement gives effect to three overlapping but conceptually distinct values: (1) it discourages objectionable police practices; (2) it protects the mental freedom of the individual; and (3) it preserves a quality of fundamental fairness in the criminal justice system." *State v. Mikulewicz,* 462 A.2d 497, 500 (Me.1983).

[¶ 9] In applying a totality of the circumstances analysis to determine voluntariness, we have considered both external and internal factors, such as: the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct. We have applied these factors to determine the situations in which the totality of the circumstances indicate that a defendant's admission is no longer the result "of his own free will and rational intellect." *See Rees,* 2000 ME 55, ¶ 3, 748 A.2d at 977. For example, in *Rees,* the defendant's statements were involuntary because the record clearly indicated he suffered from dementia. *Id.* ¶¶ 1–2, 748 A.2d at 977. In *Mikulewicz,* the defendant's statements were involuntary because of his age, his nakedness throughout the interrogation, his illness, the length of the continuous interrogation, the number of officers involved, and the officers' use of alcohol to encourage him to

talk. *Mikulewicz,* 462 A.2d at 498–99, 501. Similarly, in *Caouette,* although the deputy told the defendant he did not want to discuss the case and that anything he said could be used against him, the defendant's statements were involuntary because he was incarcerated, vomiting, crying, frightened, emotionally upset, and had no conscious intent to discuss the case. *Caouette,* 446 A.2d at 1121, 1124.

[¶ 10] In contrast, in *Coombs,* the defendant's statements, made while she was crying and intermittently handcuffed to a pole in the interrogation room during a two to three hour interrogation, were voluntary beyond a reasonable doubt when the officer testified that she was not threatened nor promised anything in exchange for her confession (other than his willingness to dispose of some marijuana found in her vehicle). *Coombs,* 1998 ME 1, ¶¶ 5–6, 11–12, 704 A.2d at 389, 391. Likewise, in *State v. Theriault,* 425 A.2d 986 (Me.1981), the defendant's statements, made after the officers stated that "it would be better to tell us (the truth)" and "people would think more of [you] if [you] got it off [your] chest," were voluntary and not elicited by a promise of leniency. *Id.* at 990.

[¶ 11] The findings made at the suppression hearing are as follows: Sawyer's vehicle was blocked by the officer's, the officer arrived with his blue lights on, the officer directed Sawyer's movements and asked questions, and the officer was of the opinion that Sawyer was not free to walk away. The court determined that Sawyer was not in custody,[4] and the officer testified that in communicating with Sawyer, he did not

4. The court made the following findings to determine that Sawyer was not in custody: The court finds that there were two vehicles stopped in a private driveway, four people were walking around and one officer was present in a police cruiser, the cruiser blocked the vehicles, and the officer initiated questions when he first arrived on the scene to determine who was driving the vehicles. The court concludes that [the] officer's conduct was not of such a coercive nature nor the physical setting so unfriendly that the defendant would have believed he was in police custody or constrained to the degree associated with formal arrest.

have his gun drawn and did not speak in a threatening manner. Because the court placed great importance on the irrelevant subjective belief of the police officer, as to whether Sawyer was free to walk away, we must vacate the suppression and remand for a reevaluation of the circumstances.[5]

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

ALEXANDER, J., with whom CALKINS, J., joins, dissenting.

[¶ 12] I respectfully dissent. The Fifth Amendment to the United States Constitution mandates that: "No person ... shall be compelled in any criminal case to be a witness against himself ...." U.S. CONST. amend. V. Article 1, section 6 of the Maine Constitution provides essentially the same protection: "The accused shall not be compelled to furnish or give evidence against himself or herself." ME. CONST. art. I, § 6. Today, the Court apparently modifies those centuries old protections to require that a criminal defendant present at least some evidence questioning the voluntariness of a statement or risk losing a favorable ruling on an issue upon which the State bears the burden of proof beyond a reasonable doubt.[6] *See State v. Coombs*, 1998 ME 1,

¶ 10, 704 A.2d 387, 390. A defendant may have the responsibility to raise the issue of voluntariness of a statement. *See* M.R.Crim. P. 12(b)(3) & 41A. That obligation was satisfied when Sawyer filed his motion to suppress. *See* M.R.Crim. P. 41A(a).

[¶ 13] With the motion to suppress filed, the State "bears the burden of establishing voluntariness beyond a reasonable doubt" before the statement can be admitted in evidence against the defendant. *Coombs*, ¶ 10, 704 A.2d at 390. *See also State v. Rees*, 2000 ME 55, ¶¶ 5–8, 748 A.2d 976, 978–79; *State v. Caouette*, 446 A.2d 1120, 1122–23 (Me.1982).

[¶ 14] We require the State to meet this burden as a prerequisite to use of a defendant's statement at trial, for reasons originally articulated in *State v. Collins*, 297 A.2d 620, 626 (Me.1972), and confirmed in *Caouette* and *Rees*, because:

> The constitutional privilege against self-incrimination ... reflects a high priority commitment to the principle that excluded as available to government is any person's testimonial self-condemnation of crime unless such person has acted 'voluntarily' i.e., unless he has 'waived' his constitutional privilege against self-incrimination *by choosing, freely and knowingly, to provide criminal self-con-*

---

**5.** Furthermore, Sawyer did not present evidence to indicate that his statement was involuntary. *See People v. Cozzi*, 93 Ill.App.3d 94, 48 Ill.Dec. 670, 416 N.E.2d 1192, 1195 (1981) ("Where the State makes *prima facie* showing that a confession was voluntary, the burden of producing evidence to show that confession was involuntary shifts to the defense, and shifts back to the State only when defendant has produced such evidence."); *see also State v. Eaton*, 577 A.2d 1162, 1167 (Me.1990) (finding a statement to be voluntary when the officer testified to the non-coercive nature of the incident and the defendant did not produce contrary evidence).

**6.** To support this proposition, the Court cites *State v. Eaton*, 577 A.2d 1162, 1167 (Me. 1990). *Eaton* affirmed a trial court finding that a defendant's statement was voluntary. In supporting the result, our opinion noted that the officer's testimony supported the voluntariness finding and that the defendant "produced no evidence to the contrary." *Id.* That statement, affirming a voluntariness finding, provides absolutely no support for the proposition that a defendant's failure to present evidence may cause him to lose a favorable ruling that the state has not met its burden of proof on the voluntariness issue.

*demnation by utterances from his own lips.*

Rees, 2000 ME 55, ¶ 6, 748 A.2d at 978 (quoting *Collins,* 297 A.2d at 626) (emphasis in original). *See also Caouette,* 446 A.2d at 1122.

[¶ 15] Any party, civil or criminal, defending against an issue on which the other party has the burden of proof, may rely solely on the evidence presented by the proponent of the issue and then urge, as Sawyer successfully urged here, that the evidence is insufficient to satisfy the proponent's burden of proof. In supporting the position that the burden of proof is not satisfied, the opponent may rely on facts presented in the hearing, reasonable inferences drawn from those facts, and the trial judge's discretion to simply disbelieve the proponent's witness. *See In Re Fleming,* 431 A.2d 616, 618 (Me.1981). This is so even if the proponent's testimony "was undisputed." *Id.See also Foss v. Ingeneri,* 561 A.2d 498, 499 (Me.1989) (holding that although liability was established by default and plaintiff "may have proved a loss," jury award of no damages affirmed because plaintiff had burden of proof).

[¶ 16] To have us affirm the trial judge's finding that the State's burden of proof has not been met, the defendant need not "present evidence to indicate that his statement was involuntary." Ante, ¶ 11 n. 5 (Court's opinion). Rather, to have us reverse the trial judge's finding, the State must demonstrate to us that a contrary finding—here that the statement was voluntary beyond a reasonable doubt—was compelled by the evidence. *See Caouette,* 446 A.2d at 1123–24. *See also Estate of Sylvester v. Benjamin,* 2001 ME 48, ¶ 9, 767 A.2d 297, 300. A voluntariness finding beyond a reasonable doubt cannot be compelled where it was within the trial judge's discretion to disbelieve part or all of the testimony of the State's single witness.

[¶ 17] Although different factfinders could reach a different result, that is not to say that a different result is compelled. Any police interrogation that focuses on particular suspects regarding particular events has the potential for creating a "coercive atmosphere." *State v. Preston,* 411 A.2d 402, 406 (Me.1980). When "compulsion of whatever nature or however infused, propels or helps to propel the confession," use of the confession "offends due process." *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (*quoted in Caouette,* 446 A.2d at 1123).

[¶ 18] In the instant case, the trial judge could have disbelieved the officer's testimony regarding the circumstances of Sawyer's statement. Alternatively, the trial judge could have determined that the evidence presented by the officer indicated sufficiently coercive circumstances at the time the officer spoke with Sawyer that the voluntariness of Sawyer's statement could not be proven beyond a reasonable doubt. Certainly, this evidence "does not compel a finding that the defendant was free from 'compulsion of whatever nature.'" *Caouette,* 446 A.2d at 1123–24 (quoting *Culombe,* 367 U.S. at 602, 81 S.Ct. 1860).

[¶ 19] In consideration of a criminal defendant's rights, the State has an appropriately high standard of proof. At the same time, the scope of our review of the trial judge's decision is very narrow. *See Coombs,* 1998 ME 1, ¶ 7, 704 A.2d at 389–90. We cannot broaden the scope of review by characterizing the trial judge's findings as issues of law rather than issues of fact.

[¶ 20] Voluntariness is a question of fact for the trial court. The trial court decides whether the State has proven voluntariness beyond a reasonable doubt based on its view of the evidence and the totality of

the circumstances, including its capacity to believe and to disbelieve witnesses. *Rees,* 2000 ME 55, ¶ 3, 748 A.2d at 977. It is not our place, as an appellate court limited to deferential review, to usurp the trial court's role by applying our own totality of the circumstances test and recharacterizing voluntariness as a "legal conclusion" rather than a finding of fact in order to vacate a ruling granting a motion to suppress. We have deferentially reviewed and affirmed voluntariness findings and denials of motions to suppress, even where a fair reading of the record indicated significant coercion. *See Coombs,* 1998 ME 1, ¶ 11, 704 A.2d at 391; *State v. Kremen,* 2000 ME 117, 754 A.2d 964. Grants of motions to suppress and findings that the State has failed to meet its burden of proof should be accorded the same deferential review.

[¶ 21] If we respect the high standards of proof imposed on the State and if we respect the narrow scope of our review of trial court findings that a proponent's burden of proof has not been met, the trial judge's findings that the voluntariness of Sawyer's statement was not proven beyond a reasonable doubt must be affirmed.

[¶ 22] The question regarding the sufficiency of the evidence to support probable cause to arrest presents a different issue. The officer was at the scene, he observed the various individuals involved, and indisputably he heard Sawyer state that he was the operator of the motor vehicle. Probable cause may be based on a wide variety of information, some of which may be inadmissible at trial. While finding against the State on the voluntariness issue, the court made no finding of official misconduct. Because there was no finding of official misconduct incident to the arrest of Sawyer, and considering all the evidence available to the officer at the time, the officer had probable cause, as a matter of law, to believe that Sawyer had operated the vehicle in violation of the law. Thus, I concur in the result as to the Court's ruling on the suppression of the arrest.

[¶ 23] Accordingly, I would affirm the ruling of the trial court regarding suppression of the statement, but I concur in the result regarding suppression of the arrest.