STATE OF MAINE A True Copy
Attest: *Jody A. Bought*
Clerk of Courts

CUMBERLAND, ss.

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-06-1504

STATE OF MAINE

v.

ERWIN EDWARDS,

Defendant

DECISION ON MOTION
TO SUPPRESS

DONALD L. GARBRECHT
LAW LIBRARY

AUG 02 2001

This matter comes before the court on the defendant's Motion to Suppress certain evidence, including statements made by the defendant while in custody. Following a testimonial hearing and consideration of the totality of the circumstances, the court will grant the motion.

## Facts

In May of 2006, a Portland Police Department detective was investigating a series of burglaries and robberies. A cell phone taken from the location of one of the crimes had been recovered, and calls made on the cell phone after its theft were traced back to a person with whom the defendant had a relationship. On May 25, 2006, the detective learned that the defendant was being held at the Cumberland County Jail for unpaid fines. The detective went to the jail and had the defendant brought to an interview room to ask questions. The defendant and the detective were the only two in the room. The defendant was in a jail uniform, but had no handcuffs or other restraints. The detective read the defendant his *Miranda* rights, which the defendant appeared to understand. Following the *Miranda* cautions, the ensuing interview took approximately an hour. The defendant appeared to the detective to be calm and indifferent.

The detective started his interview by telling the defendant that he was there to discuss five burglaries. The detective informed the defendant of the stolen cell phone

and the call traces. When the defendant indicated that he used the phone after borrowing it from others on Congress Street, the detective informed the defendant that he did not believe the story since the defendant's fingerprints had been found in the apartment where the theft took place. This statement was a deliberate misrepresentation; a lie designed to see how the defendant would respond.

The detective subsequently told the defendant that the brother of the owner of the apartment might have seen the defendant leaving the premises. This was another deliberate misrepresentation—the brother's statement was only that he had seen a tall, thin black male in a vinyl trench coat leaving the premises. The defendant is a black male.

The detective also asked the defendant if he would write letters of apology to two of the victims, which the defendant did. The apology letter ploy was to help strengthen the detective's case against the defendant, a technique learned from other detectives. In fact, at the suppression hearing the detective was quite open and matter-of-fact in describing these various ploys as apparently routine investigative techniques.

The defendant also testified at the motion hearing. According to his testimony, he had been in the Cumberland County Jail for two to three days due to an unpaid fine on a charge of operating a motor vehicle after suspension. Defendant had been electrocuted on the job in July of 2002, and as a result takes medications for the injury, including a heart blocker and medications for pain. Defendant has also been diagnosed with post-traumatic stress disorder as a result of the incident. The defendant had not been given any medications during the time that he had been in jail. Defendant testified he was affected by this lack of medication, was in severe pain, was confused and had very high blood pressure during the time he was being interrogated. The detective recalls the defendant mentioning the injury, but nothing about the lack of medication.

The defendant also testified that he thought the letters that he wrote were letters of sympathy, not apology, and that he had merely copied what the detective had dictated to him. The detective denied the dictation.

## Discussion

The question presented by this motion is whether the statements made by the defendant, including the letters of apology, were voluntarily made. If the statements were not voluntary, and were not the result of an exercise of free will and rational intellect, then use of the statements at trial would potentially violate the defendant's rights under the Fifth and Fourteenth Amendments of the United States Constitution and Art. I, § 6 of the Constitution of Maine. The burden of proving voluntariness is upon the State and it must be proved, under the State Constitution, beyond a reasonable doubt. *State v. Caouette*, 446 A.2d 1120 (Me. 1982). The motion judge must make this determination after considering the totality of the circumstances.

The factual circumstances outlined above indicate three key factors for consideration in making the necessary determination in the present case: (1) the defendant was in custody and interviewed at the jail while in a jail uniform; (2) the defendant had not had access to necessary pain relief and blood pressure medications for the two to three days he had been in custody; and (3) the detective employed intentional trickery and deception in attempting to trap the defendant into making inculpatory statements during the interview. The first two elements are not contested by the State, but the State's evidence would be sufficient to prove the statements were voluntary if these are the only factors. The issue before the court is whether addition of the third element – police trickery – changes the totality of the circumstances sufficiently in the defendant's favor that the State's prove of voluntariness is insufficient.

In *State v. Sawyer*, 2001 ME 88, ¶ 8, the Law Court quoted from *State v. Mikulewicz*, 462 A.2d 497, 500 (Me. 1983), as follows:

> [T]he voluntariness requirement gives effect to three overlapping but conceptually distinct values: (1) it discourages objectionable police practices; (2) it protects the mental freedom of the individual; and (3) it preserves a quality of fundamental fairness in the criminal justice system.

The *Sawyer* court then went on to list some external and internal factors to be considered in analyzing the voluntariness issue, including "police trickery." However, there does not appear to be any further development of the police trickery/voluntariness issue in Maine. Although a matter of first impression here, the issue has been addressed in the jurisprudence of both the federal courts and those of the other states.

In the federal courts, a leading case in the First Circuit is *U.S.A. v. Byram*, 145 F.3d 405 (1st Cir. 1998), on appeal from the United States District Court for the District of Maine. The *Byram* court noted that decisions of the Supreme Court emphasized the coercive nature of official tactics when judging voluntariness. With regard to "trickery" the court stated:

> Certainly some types of police trickery can entail coercion: consider a confession obtained because the police falsely threatened to take a suspect's child away from her if she did not cooperate. . . . but trickery is not automatically coercion. Indeed, the police commonly engage in such ruses as suggesting to a suspect that a confederate has just confessed or that police have or will secure physical evidence against the suspect. While the line between ruse and coercion is sometimes blurred, confessions procured by deceits have been held voluntary in a number of situations.

*Byram* at 408. If the federal standard as presented in *Byram* was the correct standard for the present case, the State probably would have met its burden since the trickery here did not involve direct coercion. However, the Law Court has been clear in stating that it has "adopted a more stringent standard of proof [than the federal standard] for

establishing the voluntariness of statements in order to better secure the guarantee of freedom from self-incrimination [found in the Maine Constitution[1]]." *State v. Rees*, 2000 ME 55, ¶ 5, 748 A.2d 976, 978. Reading together *State v. Collins*, 297 A.2d 620 (Me. 1972), *State v. Caouette*, and *State v. Rees*, it is clear that the degree of protection afforded a defendant under the Maine Constitution with regard to voluntariness of statements is more stringent than that recognized by the federal courts under the United States Constitution.

The Maine standard for assessing voluntariness more closely tracks that applied by Massachusetts and other state courts. With regard to law enforcement use of trickery, misinformation and deception, the Supreme Judicial Court of Massachusetts has both condemned the practices while at the same time recognizing that such tactics need to be evaluated on a case-by-case basis; a practice that appears consistent with Maine case law.[2] The position of the courts in the Commonwealth perhaps is most fully stated in *Commonwealth v. DiGiambattista*, 813 N.E.2d 516 (Mass. 2004), where it was stated:

> Close analysis of our case law on the subject of trickery suggests that where the use of a false statement is the only factor pointing in the direction of involuntariness, it will not ordinarily result in suppression, but that if the circumstances contained additional indicia suggesting involuntariness, suppression will be required.

813 N.E.2d 524 (citations omitted), and:

> While we adhere to the view that false statements about the evidence against the suspect do not automatically render the suspect's confession involuntary, we note that ongoing research has identified such use of false statements as a significant factor that pressures suspects into waiving their rights and making a confession. . . . This is particularly true where, as here, the false statements suggest a form of incriminating evidence that would be viewed as

---

[1] "In all criminal prosecutions, the accused . . . shall not be compelled to furnish or give evidence against himself . . . " Me. Const. Art. I, § 6.

[2] *See generally*, Joseph A. Grasso & Christine M. McEvoy, *Suppression Matters Under Massachusetts Law* §18-9 (c)(5) (2006)

incontrovertible. If a person is told that he appears on a surveillance tape, or that his fingerprints or DNA have been found, even an innocent person would perceive that he or she is in grave danger of wrongful prosecution and erroneous conviction.

313 N.E.2d 524, 525 (citations omitted).

Courts in jurisdictions other than Massachusetts have also addressed in one way or another the theme of police trickery in the context of motions to suppress evidence.[3] What can be said generally is that state courts appear to uniformly consider police trickery as only one relevant factor when conducting an analysis under the "totality of the circumstances" test.

Turning to the facts in the present case, the detective employed three different techniques of trickery or deception in attempting to elicit a confession from the defendant. First, the detective implied that the defendant's fingerprints had been found at the scene of the crime, knowing that this representation was simply false. Second, the detective implied that the State had an eyewitness who could identify the defendant personally as an individual seen leaving the scene of the crime, while in fact any such identification was generic in nature. Third, the detective used the ploy of suggesting the defendant write letters of apology to try to obtain further incriminating statements.

In addition to the use of this trickery and deception, other circumstances to be considered include the fact that the interview took place at the county jail. The defendant was not being held on charges with which he is presently charged; nevertheless he was in an atmosphere of official confinement which would have an effect upon how the defendant would respond to the detective's questioning. Finally, there is the issue of the defendant's medical condition and deprivation of medications.

---

[3] For example, see: *State v. Patton*, 826 A.2d 783 (N.J. Super. Ct. App. Div. 2003); *State v. Cayward*, 552 S.2d 971 (Fla. Dist. Ct. App. 1989); *Sheriff, Washoe County v. Bessey*, 914 P.2d 618 (Nev. 1996); *Lincoln, Jr. v. State*, 882 A.2d 944 (Md. Ct. Spec. App. 2005).

In summary, it could be argued that none of the factors mentioned above, taken by itself, would rise to the level of making a statement by the defendant involuntary for constitutional purposes. However, when the totality of all of these factors is considered, the State has not met its burden of proving beyond a reasonable doubt that the statements sought to be suppressed were voluntarily given. Therefore, as a matter of Maine constitutional law, the statements must be suppressed.

The entry will be:

> Motion GRANTED and ORDERED that the State may not use statements made by or written by the defendant during his Cumberland County Jail interrogation as evidence in the State's case-in-chief.

Dated: May 4 , 2007

S. Kirk Studstrup
Justice, Superior Court