ENTERED NOV 0 4 2014

STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
AUGUSTA
DOCKET NO. CR-14-689
KEN-REM- 09-18-14

STATE OF MAINE

v.

ORDER ON DEFENDANT'S
MOTION TO SUPPRESS

DANIEL SWEET,
    defendant

This matter came before the undersigned on 9/4/2014 with respect to the defendant's Motion to Suppress filed June 11, 2014. Defendant's motion seeks to suppress any statements made by defendant because the statements were either involuntary, made without the benefit of defendant being given his *Miranda* rights, made without a voluntary waiver of defendant's *Miranda* rights, or were made in violation of the defendant's right to counsel. After hearing, which included a videotape of the defendant's interaction with the two state troopers involved in the case, the Court makes the following Findings of Fact and Conclusions of Law upon which the **Order** set out below is based:

1.    Defendant was arrested on or about April 10, 2014 for domestic violence assault as well as for two counts of unlawful possession of scheduled drugs, Class E.

2.    The arrest occurred after two Maine State Troopers ("troopers") interviewed the defendant on April 10, 2014 concerning an incident involving the defendant's wife and defendant the night before.

3.    The troopers went to the wife's parents' home to interview the defendant. The troopers were in full uniform and in marked State Police cruisers. The interview took place outside next to defendant's motor vehicle, which was blocked from backing out of the residence's driveway by one, and perhaps two, cruisers.

4.    After trooper Turcotte asked the defendant a series of questions begining with "(C)ould you tell me what took place last night..." and also asking defendant "(D)id you hit her...did you hold her down...?" and the defendant responded, the trooper put the defendant under arrest, handcuffing him. When the defendant asked the trooper was he under arrest, the trooper responded in the affirmative. When the defendant asked why he was under arrest, the trooper responded "domestic violence assault."

5. The trooper then asked the defendant a series of questions after the defendant was placed under arrest, before the defendant was transported, and before the defendant was read his *Miranda* rights. It is clear to the undersigned that defendant was not going to be allowed to leave the premises, nor would any reasonable person in the position of defendant believe that they would be allowed to leave. *See State v. Ormsby, 2013 ME 88.* Accordingly, the Court finds that any inculpatory statements made in response to interrogation by the troopers took place while defendant was in custody and either not read his *Miranda* rights or were taken after defendant invoked his *Miranda* rights, *see* below. Accordingly, the statements are suppressed from being used as part of the State's case in chief.

6. While still at the scene defendant was asked whether he wanted his car locked, to which the defendant replied "yeah." Defendant was also asked if he wanted his cellphone and wallet, to which the defendant also replied "yeah." One of the troopers stated he would get the items for defendant; defendant said he would get them himself, to which Trooper Turcotte said "no, we'll get them…" or words to that effect. Defendant then told the troopers that the items "should be right in the middle console…"

7. While getting the defendant's cellphone and wallet out of defendant's car the trooper noted drugs in plain view, and stated "(N)ow I know why he didn't want me in here…"

8. Trooper Turcotte asked the defendant if he had a prescription for the drugs, to which the defendant said no.

9. Defendant sounded on the videotape as if he was under the influence of either drugs or alcohol or a combination of both while speaking with the troopers.

10. After Trooper Turcotte gives the defendant his *Miranda* rights as they are driving to the jail/police station, the defendant is asked whether he wants to speak to the trooper, and the defendant responds "no."

11. After the defendant has invoked his right to remain silent the trooper asked the defendant if some hypodermic needles found in defendant's car were "capped" to which the defendant says "yes."

12. Thereafter, the defendant begins to ask the trooper questions and also volunteers certain information. Defendant expresses concerns about losing his job and "having a problem" apparently with alcohol. Defendant asks that the trooper "please don't have (my employer's car) towed…"

13. Notwithstanding the defendant's unequivocal invocation of his right to remain silent, the trooper asks defendant while driving to the jail/station whether defendant would be willing to write out a statement for the trooper concerning "what happened last night" to which the defendant replies "no" and

2

then asks "do I have to..?" The trooper responded that the defendant did not have to write out a statement. The defendant remarks "I know it might help my case if I do..." to which the trooper again asks defendant if he wants to make out a statement.

14. The trooper also tells defendant that he will have to deal with some drug charges arising out of the discovery of drugs in defendant's motor vehicle, and that possession of Percocet "is a felony". In response the defendant identifies what the drugs were in fact.

15. The colloquy between the troopers and the defendant regarding whether the defendant wanted his motor vehicle locked and/or whether the defendant wanted his cellphone and wallet and the defendant's responses to same were not the result of custodial interrogation, and thus are not suppressed. The drugs found in the vehicle were not the product of an illegal search and seizure, but instead were discovered by the troopers after they were implicitly, if not explicitly, given permission by the defendant to go inside the vehicle and procure the defendant's cellphone and wallet. The drugs were in plain view and were properly seized by the troopers.

16. Once defendant was placed under arrest placed in the cruiser, and transported to the jail/station, defendant was given his *Miranda* rights and invoked same. After a suspect has invoked his right to remain silent, he cannot be found later to have waived that right by responding to later police questioning unless his invocation of that right has been "scrupulously honored." *State v. Grant, 2008 ME 14.* A suspect's invocation of his right to remain silent is considered to have been "scrupulously honored" if the actions of law enforcement following his invocation can survive a four-factor analysis. These factors are: (1) whether the police immediately cease the interrogation when the defendant invokes the right to remain silent; (2) whether a significant amount of time passes before questioning is resumed; (3) whether fresh *Miranda* warnings are provided; and (4) whether the later interrogation is restricted to subject matter distinct from the former interrogation. *Id.* ¶ 42. The Court finds that defendant's right to remain silent was not "scrupulously honored" by the trooper, as the trooper only minutes after the defendant invoked his right to remain silent inquired if defendant would write out a statement for the trooper as well as asked the defendant questions such as whether the hypodermic needles were capped. The trooper also made statements such as what he perceived the drugs seized to be, which prompted the defendant to make statements concerning what the drugs actually were.

17. Additionally, with respect to statements of the accused, voluntariness is a separate inquiry. *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). Statements by the defendant are admissible in evidence only if they are voluntary; the State bears the burden of proving voluntariness beyond a reasonable doubt. *State v. Sawyer*, 2001 ME 88, ¶ 8, 772 A.2d 1173, 1175. In order to find a statement voluntary, it must first be established that it is the result of defendant's exercise of his own free will and rational intellect. *State v. Rees*, 2000 ME 55, ¶ 3, 748 A.2d 976, 977. in applying a totality of the circumstances analysis to determine

3

voluntariness, both external and internal factors are considered, such as: the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct. *State v. Sawyer*, 2001 ME 88, ¶ 9, 772 A.2d 1173, 1176; *see, e.g., State v. Rees*, 2000 ME 55, ¶¶ 1-2, 748 A.2d 976, 977 (defendant's statements involuntary because he suffered from dementia); *State v. Mikulewicz*, 462 A.2d 497, 498-99, 501 (Me. 1983) (defendant's statements were involuntary because of his age, his nakedness throughout the interrogation, his illness, the length of the continuous interrogation, the number of officers involved, and the officers' use of alcohol to encourage him to talk); *State v. Caouette*, 446 A.2d 1120, 1121, 1124 (Me. 1982) (although defendant was told by officer he did not want to discuss the case and that anything he said could be used against him, the defendant's statements were involuntary because he was incarcerated, vomiting, crying, frightened, emotionally upset, and had no conscious intent to discuss the case).

18. The Courts finds the defendant's statements to be voluntary beyond a reasonable doubt.

19. The Court finds that the response made by defendant to the question of whether the defendant had a prescription for the drugs seized was made after defendant was taken into custody but prior to any *Miranda* warnings being given. Thus, that statement is suppressed.

20. Finally, although not directly raised by the defendant in his Motion to Suppress, the Court addresses any argument that the seizure of the drugs made shortly after defendant's arrest is somehow constitutionally infirm. The defendant was asked whether he had a cellphone or wallet in his motor vehicle that he wanted. Defendant responded that he did, and also stated he would "grab them." Defendant was told he was not going to be allowed to do so, whereupon he told the troopers where the items would be located. When one of the troopers went back to defendant's vehicle to get the cellphone and wallet, the drugs were discovered "in plain view" according to the trooper.

21. The Court finds that the discovery of and resulting seizure of the drugs by the troopers was not the product of an illegal search and seizure, but rather was the product of the defendant informing the officers that he in fact wanted his cellphone and wallet and providing the troopers directions as to where those items would be found in the motor vehicle.

22. In summary, defendant's Motion To Supress is **granted in part and denied in part:** any statements made by the defendant of an inculpatory nature

4

are excluded as part of the State's case in chief for the reasons stated above.  The drugs seized from defendant's motor vehicle are **not** suppressed for the reasons stated above.

Date: 9/18/2014

BY _____

Robert E. Mullen, Justice
Maine Superior Court

SUPERIOR COURT

KENNEBEC, ss.

Docket No  AUGSC-CR-2014-00689

**DOCKET RECORD**

DOB: 12/15/1981

Attorney: THOMAS CAREY

       THOMAS J CAREY ESQ

       PO BOX 125

       VIENNA ME 04360-0125

       APPOINTED 05/21/2014

State's Attorney: MAEGHAN MALONEY

Filing Document: CRIMINAL COMPLAINT

Filing Date: 05/09/2014

Major Case Type: MISDEMEANOR (CLASS D,E)

## Charge(s)

**1   DOMESTIC VIOLENCE ASSAULT**      **04/09/2014 BELGRADE**

**Seq 11286 17-A  207-A(1)(A)**     **Class D**

  **STEWART**       **/ MSP**

**2   UNLAWFUL POSSESSION OF SCHEDULED DRUG**   **04/10/2014 BELGRADE**

**Seq 8574  17-A  1107-A(1)(F)**     **Class E**

  **STEWART**       **/ MSP**

**3   UNLAWFUL POSSESSION OF SCHEDULED DRUG**   **04/10/2014 BELGRADE**

**Seq 8574  17-A  1107-A(1)(F)**     **Class E**

  **STEWART**       **/ MSP**

## Docket Events:

07/07/2014 Charge(s): 1,2,3

       TRANSFER -  TRANSFER FOR JURY TRIAL EDI ON 07/07/2014 at 04:34 p.m.

       TRANSFERRED CASE: SENDING COURT CASEID WATDCCR201400644

       FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 05/09/2014

       Charge(s): 1,2,3

       HEARING -  ARRAIGNMENT SCHEDULED FOR 05/20/2014 at 01:00 p.m.

       NOTICE TO PARTIES/COUNSEL

       Charge(s): 1,2,3

       HEARING -  ARRAIGNMENT HELD ON 05/20/2014

       DEFENDANT INFORMED OF CHARGES.  21 DAYS TO FILE MOTIONS

       Charge(s): 1,2,3

       PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 05/20/2014

       TRIAL -  BENCH SCHEDULED FOR 06/25/2014 at 08:30 a.m.

       NOTICE TO PARTIES/COUNSEL

       TRIAL -  BENCH NOT HELD ON 06/30/2014

       TRIAL -  BENCH NOTICE SENT ON 05/22/2014

07/07/2014 BAIL BOND - $100.00 CASH BAIL BOND SET BY COURT ON 05/20/2014

NO DIRECT CONTACT WITH DEANNA TRUMAN, BAIL REVIEW 5-21-14
Charge(s): 1,2,3
MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 05/21/2014

Charge(s): 1,2,3
MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 05/21/2014

COPY TO PARTIES/COUNSEL
Party(s): DANIEL SWEET
ATTORNEY - APPOINTED ORDERED ON 05/21/2014

Attorney: THOMAS CAREY
BAIL BOND - $1,000.00 CASH BAIL BOND SET BY COURT ON 05/21/2014

OR $200 WITH MPTC, NOT USE OR POSSESS ALCOHOLIC BEVERAGE OR ILLEGAL DRUGS; NOT TO POSSESS
ANY DANGEROUS WEAPONS, INCLUDING, BUT NOT LIMITED TO FIREARMS;IN ORDER TO DETERMINE IF
SHE/HE HAS VIOLATED ANY PROHIBITION OF THIS BLOOD REGARDING ALCOHOLIC BEVERAGES,ILLEGAL
DRUG OR DANGEROUS WEAPONS, SHE/HE WILL SUBMIT TO SEARCH OF HER/HIS PERSON, VEHICLE AND
RESIDENCE AND IFAPPLICABLE, TO CHEMICAL TESTS; AT ANYTIME WITHOUT ARTCULABLE SUSPICION OR
PROBABLE CAUSE; NO CONTACT WITH DEANNA TRUMAN
BAIL BOND - $1,000.00 CASH BAIL BOND FILED ON 05/27/2014

BAIL BOND - CASH BAIL BOND DISBURSEMENT ON 06/30/2014

BAIL BOND - CASH BAIL BOND COND RELEASE ISSUED ON 05/27/2014

NO USE/POSS OF ALCOHOL/DRUGS/DANG. WEAPONS INCLUDING FIREARMS, SUBMIT TO SEARCH AND TEST
OF PERSON, MV AND RESIDENCE FOR SAME, NO CONTACT DIRECT OR INDIRECT WITH DEANNA TRUMAN AND
NOT TO ENTER HER RESIDENCE, PLACE OF EMPLOYMENT OR EDUCATION
BAIL BOND - CASH BAIL BOND HOLD FOR OTHER COURT ON 05/27/2014

BAIL IS CONCURRENT TO AUGSCCR201400665 HAVING BAIL ID GHH322
BAIL BOND - CASH BAIL BOND HOLD FOR OTHER COURT ON 05/28/2014

BAIL IS CONCURRENT TO AUGSCCR201400604 HAVING BAIL ID GHH320
MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 06/11/2014

MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 06/16/2014
CHARLES DOW , JUDGE
COPY TO PARTIES/COUNSEL
                                                    TIME TO FILE MOTIONS EXTENDED
TO 6/21/14
MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 06/18/2014

MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 06/19/2014
CHARLES DOW , JUDGE
COPY TO PARTIES/COUNSEL
MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 06/11/2014

MOTION - MOTION EXPERT WITNESS REPORT FILED BY DEFENDANT ON 06/11/2014

Charge(s): 1,2,3
TRANSFER -  TRANSFER FOR JURY TRIAL GRANTED ON 06/30/2014

Charge(s): 1,2,3
TRANSFER -  TRANSFER FOR JURY TRIAL REQUESTED ON 06/11/2014

Charge(s): 1,2,3
FINDING -  TRANSFER FOR JURY TRIAL TRANSFERRED ON 07/07/2014

AUGSC
07/09/2014 Charge(s): 1,2,3
TRANSFER -  TRANSFER FOR JURY TRIAL RECVD BY COURT ON 07/01/2014

WATDC 14-644
07/09/2014 TRIAL -  DOCKET CALL SCHEDULED FOR 09/03/2014 at 01:00 p.m.

07/09/2014 HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 09/04/2014 at 08:30 a.m.

NOTICE  TO PARTIES/COUNSEL
07/09/2014 BAIL BOND - $1,000.00 CASH BAIL BOND FILED ON 07/01/2014

Bail Receipt Type: CR
Bail Amt:  $1,000
                              Receipt Type: CK
Date Bailed: 05/21/2014    Prvdr Name: ELMER  SWEET
                           Rtrn Name: ELMER  SWEET

07/09/2014 HEARING -  MOTION EXPERT WITNESS REPORT SCHEDULED FOR 09/04/2014 at 08:30 a.m.

09/03/2014 Charge(s): 1,2,3
TRIAL -  JURY TRIAL SCHEDULED FOR 09/05/2014 at 08:30 a.m.

NOTICE TO PARTIES/COUNSEL
09/06/2014 Charge(s): 1,2,3
TRIAL -  JURY TRIAL CONTINUED ON 09/04/2014

09/06/2014 Charge(s): 1,2,3
TRIAL -  DOCKET CALL SCHEDULED FOR 10/06/2014 at 10:30 a.m.

09/06/2014 TRIAL -  DOCKET CALL HELD ON 09/03/2014
ROBERT E MULLEN , JUDGE
Defendant Present in Court
09/06/2014 HEARING -  MOTION EXPERT WITNESS REPORT CONTINUED ON 09/04/2014

09/07/2014 HEARING -  MOTION TO SUPPRESS HELD ON 09/04/2014
ROBERT E MULLEN , JUDGE
Attorney: THOMAS CAREY
DA:  TRACY DEVOLL
Defendant Present in Court
09/07/2014 MOTION -  MOTION TO SUPPRESS UNDER ADVISEMENT ON 09/04/2014
ROBERT E MULLEN , JUDGE
0⁵  /2014 MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT ON 09/12/2014

09, ./2014 MOTION -  MOTION TO SUPPRESS UNDER ADVISEMENT ON 09/04/2014
         ROBERT E MULLEN , JUDGE
09/18/2014 ORDER -  COURT ORDER FILED ON 09/18/2014
         ROBERT E MULLEN , JUDGE
         ORDER ON DEFENDANT'S MOTION TO SUPPRESS


A TRUE COPY
ATTEST:    _____
                     Clerk